***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments before the Full Commission. The appealing parties have shown good grounds to reconsider the evidence and upon reconsideration of the evidence, the Full Commission MODIFIES the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to the Workers' Compensation Act and the Commission has jurisdiction of the parties and of the subject matter.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named above.
4. There is no issue as to misjoinder or nonjoinder of parties.
5. Plaintiff contracted an occupational disease which defendants accepted as compensable by filing a Form 60 Employer's Admission of Employee's Right to Compensation.
6. Plaintiff's average weekly wage shall be calculated by the Form 22 Wage Chart submitted by the parties.
7. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 (a) Exhibit Number 1: Pre-Trial Agreement, IC Forms, Interrogatory Answers Medical Records
 (b) Exhibit Number 2: Affidavits of Michael Caldwell, Aman Bath, Marge Howley, Scott Van Etten and Patrick Sasso submitted post-hearing.
 (c) Plaintiff's Exhibit Number 1, Plaintiff's Job Search Log
8. The issues to be determined by the Full Commission are whether plaintiff has been disabled within the meaning of the Act since May 18, 2008, and if so, what, if any, additional benefits is plaintiff entitled to receive; and whether plaintiff is entitled to lifetime medical treatment pursuant to N.C. Gen. Stat. § 97-25.1.
 *********** *Page 3 
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 21-year-old high school graduate.
2. In October 2005, plaintiff began working part-time for defendant-employer as a cashier at the Hibriten store while she was still attending high school. Defendant-employer operates stores that sell gasoline and cigarettes. As a cashier, plaintiff took money for gas and dispensed cigarettes to customers through a drive-up or walk-up pay window. Plaintiff was not employed with defendant-employer from February 2007 until April 2007.
3. In April 2007, plaintiff returned to work as a cashier with defendant-employer at a store in a different location in Connelly Springs. The facility in Connelly Springs was a modular unit, with living quarters in the back and an office located in the front of the unit. Plaintiff worked in the office area where the drive-up window was located. The office and living quarters were separated by a door, which remained closed at all times.
4. In May 2007, plaintiff developed a runny nose, coughing and headaches. On June 6, 2007, an investigation of the premises was conducted and disclosed water damage and mold growth. As a result, defendant-employer undertook mold remediation and repairs at the facility. On May 5, 2008, post-remediation testing revealed excellent results.
5. On April 21, 2008, plaintiff was directed by defendant-employer to Dr. Marc Guerra, a family physician, with complaints of shortness of breath after an occupational exposure to mold and fungus. A spirometry examination was performed, which indicated moderate pulmonary obstruction. Plaintiff also had an elevated white blood count. Dr. Guerra diagnosed *Page 4 
plaintiff with an infection overlying reactive airways disease. He prescribed an antibiotic and an inhaler. On April 25, 2008, plaintiff returned to Dr. Guerra, who noted improvement in her condition. Dr. Guerra referred plaintiff to Dr. Dennis Darcey, an occupational medicine specialist with Duke University Medical Center.
6. On May 30, 2008, plaintiff attempted to return to work with the employer at the Connelly Springs location. However, within the first hour of her shift, she developed symptoms for which she sought treatment with Dr. Guerra on the same day. Plaintiff reported nasal congestion, eye congestion, eye burning, eye pain and minimal respiratory symptoms.
7. On June 25, 2008, plaintiff presented to Dr. Dennis Darcey, who is board-certified in preventative medicine with a subspecialty in occupational medicine and holds an industrial hygienist degree. Plaintiff reported complaints of headache and fatigue following an exposure to mold at work. A clinical examination of the lungs was normal. The remainder of plaintiff's physical examination was normal as well. Dr. Darcey recommended several additional diagnostic studies, including a pulmonary function test and allergy test. Plaintiff had no evidence of reactivity on her post-bronchodilator testing or allergy testing. Her pulmonary function test was normal as well.
8. On August 6, 2008, plaintiff attempted to return to work again at the Connelly Springs location. After approximately two hours, her eyes started burning, her nose began running and she testified that she felt as if she was smothering and could not breathe. Plaintiff left the store and went directly to Dr. Guerra's office.
9. On August 6, 2008, plaintiff reported developing a runny nose, burning eyes and nasal burning. Dr. Guerra noted, "Patient has had no respiratory distress and no obvious *Page 5 
wheezing." Plaintiff's clinical examination on that occasion indicated that her breath sounds were clear. Dr. Guerra took plaintiff out of work until August 21, 2008.
10. On August 22, 2008, plaintiff attempted to return to work with the defendant-employer a third time at the employer's store in Lenoir. The Lenoir facility was "stick-built" from the ground up and was new construction. The building has a wooden exterior with a finished plaster interior and linoleum flooring.
11. After working for approximately one to two hours at the Lenoir location, plaintiff testified she again developed a "smothering feeling" as if she could not breathe. Plaintiff left the store and sought medical treatment with Dr. Guerra. On August 22, 2008, Dr. Gary Benitez, Dr. Guerra's medical office partner, evaluated plaintiff. Pursuant to the medical records, Dr. Benitez noted, "Her main complaint today is watery eyes, sneezing. She denies any shortness of breath or wheezing." Dr. Benitez advised plaintiff to continue using her inhaler and to follow-up as needed. Plaintiff continued to treat with Dr. Guerra's medical practice on a periodic basis, but did not seek any medical treatment from August 22, 2008 until January 13, 2009 because of financial problems.
12. On April 20, 2009, plaintiff presented to Dr. James Donohue, director of the Pulmonary Critical Care Division at UNC School of Medicine, upon a referral from Dr. Guerra. Plaintiff reported shortness of breath following an exposure to mold. Dr. Donohue noted plaintiff's symptoms improved following removal from the work environment. Her clinical and respiratory examinations were normal. Plaintiff underwent a pulmonary function test during her appointment, which was interpreted as entirely normal. Dr. Donohue diagnosed plaintiff with asthma. He opined plaintiff did not have any permanent pulmonary impairment and she did not have any evidence of permanent injury to her trachea, bronchial tree or lungs as a result of her *Page 6 
condition. Dr. Donohue released plaintiff to return to full duty work, but to avoid the environment that caused the development of her condition.
13. On April 24, 2009, plaintiff presented to Dr. Douglas Kelling, who is board-certified in internal medicine and lipidology, at the request of defendants for an independent medical examination. Plaintiff's respiratory evaluation, physical examination and allergy testing were all normal. A CT scan of the chest revealed four tiny inflammatory nodules. Based upon his examination and a review of the testing and lab results, Dr. Kelling diagnosed plaintiff with asthma. He opined plaintiff did not sustain any permanent impairment due to her condition. Dr. Kelling agreed plaintiff was capable of working in an environment free of dust, fumes, gases, chemicals and extreme variations of temperature. Dr. Kelling opined the work environment at defendant-employer's Lenoir store was acceptable for plaintiff if she did not develop respiratory symptoms.
14. On July 30, 2009, Mike Caldwell collected air samples at defendant-employer's Lenoir store. These samples were sent to EMSL Analytical, Inc., a full service laboratory, for analysis. Vincent Daliessio, is the industrial hygiene project manager for EMSL. He is knowledgeable concerning all relevant standards for workplace exposures and has been trained to apply those standards to analytical data. The overwhelming majority of the compounds tested from the Lenoir sample were "non-detectible." The analysis of the Lenoir sample disclosed a formaldehyde level which was less than the OSHA standard, but slightly higher than the NIOSH standard.
15. Based on his medical specialty and his industrial hygienist degree, Dr. Darcey was able to review the environmental data prepared by EMSL and determine the health *Page 7 
consequences of environmental exposures. Dr. Darcey opined the Lenoir facility was not hazardous and provided a suitable work environment for plaintiff.
16. At his deposition Dr. Darcey stated that once a person has developed asthma or a reactive airway problem, they are more sensitive to irritants than a person who has not developed these issues. Dr. Darcey also indicated that once a person develops asthma or reactive airways problems, they can react to smaller amounts of irritants than a normal person would.
17. All of plaintiff's treating physicians have released her to return to full duty work in an environment that does not irritate her condition. Plaintiff attempted to return to work at the Lenoir store on August 22, 2008. Within approximately one to two hours, plaintiff developed eye and nose symptoms similar to the symptoms she developed at the Connelly Springs facility. She left the facility and went directly to Dr. Guerra's office for medical treatment. The medical records from that visit indicate plaintiff reported watery eyes, sneezing and nonproductive cough resulting from her time spent at the Lenoir store. Based on a review of all the competent evidence, the Full Commission finds plaintiff developed eye and nose irritation upon her return to work at the Lenoir store on August 22, 2008. As plaintiff developed symptoms within an hour of working at the Lenoir store, she was justified in refusing to continue working in this position.
18. Plaintiff is a high school graduate with experience as a cashier. Plaintiff did not keep any contemporaneous record of a job search. She produced a list of local businesses at the hearing before the Deputy Commissioner, which she offered as evidence of a job search. In an attempt to reconstruct her job search, plaintiff prepared the list approximately two weeks prior to the hearing. The job search log begins in June 2007, which is 10 months before plaintiff became sick. Plaintiff testified the job search log consisted of a list of companies she searched on the internet, but the log does not identify the specific dates of the job searches, does not identify the *Page 8 
positions for which plaintiff was seeking employment, and does not provide information about why she did not receive any offers of employment. The Full Commission does not find plaintiff's reconstructed job log to be competent evidence of a reasonable job search. Plaintiff has not worked for any employer or earned any wages since she left employment with defendant-employer on August 22, 2008.
19. Dr. Guerra removed plaintiff from work until August 21, 2008, and Dr. Benitez at the August 22, 2008, visit did not change plaintiff's work status. Therefore, after August 22, 2008, plaintiff was released by her doctors to full duty work, but was directed to avoid the environment that caused the development of her condition. Plaintiff failed to establish by the competent evidence of record that she engaged in a reasonable effort to locate any employment following her release to return to work. Plaintiff has also failed to show by the competent evidence of record that her inability to obtain employment is related to her compensable condition. Therefore, plaintiff is not entitled to additional disability benefits following her release to work on August 21, 2008.
20. Based on the greater weight of the competent medical evidence, plaintiff has not sustained any permanent impairment as a result of her occupational disease.
21. Based on the greater weight of the competent evidence, plaintiff has not sustained permanent injury to any internal organ as a result of her compensable condition.
22. Based on the Form 22 Wage Chart stipulated into evidence by the parties, plaintiff's average weekly wage is $231.07, yielding a weekly compensate rate of $154.05. For the period of April 21, 2008 through May 18, 2008, defendants paid compensation to plaintiff at the weekly rate of $145.45, resulting in an underpayment of $7.60 per week.
 *********** *Page 9 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted an admittedly compensable occupational disease in the form of asthma, which was proximately caused by causes and conditions characteristic of and peculiar to plaintiff's employment with defendant-employer. N.C. Gen. Stat. § 97-53(13).
2. The cashier position at the Lenoir store offered by defendants was not suitable employment because the work environment irritated her physical condition. Therefore, plaintiff was justified in refusing the job as the position violated her permanent medical restrictions. N.C. Gen. Stat. § 97-32.
3. Defendants admitted the compensability of plaintiff's occupational disease by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v.Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277, disc. review denied,353 N.C. 729, 550 S.E.2d 782 (2001).
4. An employee may meet her burden of proving continuing disability in one of four ways: (1) the production of medical evidence that she is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) the production of evidence that she is capable of some work, but that she has, after a reasonable effort on her part, been unsuccessful in her effort to obtain employment; (3) the production of evidence that she is capable of some work but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that she has obtained other employment at a wage less than that earned *Page 10 
prior to the injury. Russell v. Lowes Product Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
5. Plaintiff has failed to establish competent evidence of disability under any of the four prongs of Russell following her August 21, 2008, release to return to work by Dr. Guerra. Since August 22, 2008, no doctor has taken plaintiff out of work. Plaintiff is capable of some work but has not made a reasonable job search. Further, it would not be futile for plaintiff to seek employment. Russell v. Lowes Product Distribution, supra.
6. As a result of her compensable condition, plaintiff was disabled from any employment and is entitled to payment by defendants of temporary total disability compensation at the weekly rate of $154.05 for the period of May 19, 2008 to August 22, 2008. N.C. Gen. Stat. § 97-29. Plaintiff is also entitled to payment by defendants for the underpayment of temporary total disability compensation during the period April 21, 2008 through May 18, 2008.
7. As a result of her compensable condition, plaintiff is entitled to receive further medical treatment that would effect a cure, give relief or lessen her period of disability, subject to the limitations of N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-25.
8. Based on the greater weight of the medical evidence, plaintiff is not entitled to compensation for damage to an important organ, pursuant to N.C. Gen. Stat. § 97-31(24).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD *Page 11 
1. Subject to a reasonable attorney's fee approved below, defendants shall pay compensation to plaintiff at the rate of $154.05 for the period of May 19, 2008 through August 22, 2008. All such compensation has accrued and shall be paid in one lump sum.
2. For the period of April 21, 2008 through May 18, 2008, defendants paid compensation to plaintiff at the weekly rate of $145.45, resulting in an underpayment of $7.60 per week. Defendants shall pay plaintiff compensation at the rate of $7.60 per week for this period. All such compensation has accrued and shall be paid in one lump sum, subject to the attorney's fee awarded below.
3. Defendants shall pay the medical expenses incurred or to be incurred by plaintiff as a result of her compensable asthma, when bills for the same have been submitted in accordance with proper Industrial Commission procedure.
4. A reasonable attorney's fee of 25% of the compensation due plaintiff under Paragraphs 1 and 2 of this Award is hereby approved for plaintiff's counsel and shall be paid as follows: 25% of the accrued compensation due plaintiff shall be deducted from and paid in one lump sum directly to plaintiff's counsel.
5. Defendants shall pay the costs.
This 9th day of November, 2010.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG CHAIR
 S/_____________ DANNY LEE McDONALD COMMISSIONER